UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NORTHWEST ADMINISTRATORS INC,

    Plaintiff,

v.

VALLEY PUMP INC,

    Defendant.

CASE NO. 2:20-cv-01343-BAT

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Northwest Administrators, Inc. ("Northwest") moves for summary judgment pursuant to Fed. R. Civ. P. 56, to recover trust fund contributions, liquidated damages, interest, attorney's fees, and court costs from Defendant Valley Pump Inc. ("Valley Pump"), based on Valley Pump's collective bargaining labor agreements ("CBA") with Teamsters Local 174 ("Local 174"), the Employer-Union Pension Certification ("E-U"), the subscription agreement, and Trust Agreements of the Western Conference Teamsters Pension Trust ("WCTPT"), Washington Teamsters Welfare Trust ("WTWT"), and the Retirees' Welfare Trust ("RWT") (collectively, the "Trust Funds"). Dkt. 11. Valley Pump opposes the motion, but challenges only amounts owed to the WTWT during the July 1, 2015 to June 30, 2018 ("2015-2018") CBA time period. *Id.*

Having carefully reviewed the motion, Valley Pump's opposition, Northwest's reply, summary judgment evidence, and balance of the record, the Court finds that the motion should be **GRANTED**.

FACTS

A.  CBAs and Trust Agreements

Valley Pump is a Washington corporation that has employed members to a bargaining unit represented by Local 174. Dkt. 12, Declaration of Jessica Podhola (Senior Manager, Northwest Payroll Audit Department), ¶ 12. Local 174 is an employee organization within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(4). *Id.*, ¶ 13.

To participate in each Trust, an employer must submit a written Labor Agreement between it and a Union that requires payments to each Trust on behalf of its employees and that complies with the rules, regulations and policies of the Trustees governing acceptance of payments from Employers. Dkt. 12, Podhola Decl., ¶ 14. Employers and Unions also typically execute the Pension Trust Fund's "Employer-Union Pension Certification" (Pension Certification" or "E-U") for participation in the Pension Trust, and a subscription or compliance agreement to participate in the WTWT and/or the RWT. *Id.*, ¶ 14. Among other things, the E-U binds the bargaining parties to the Pension Trust Fund's Trust Agreement. *Id.*, ¶ 15. The subscription or compliance agreement binds the bargaining parties to the WTWT or the RWT Trust Agreement. *Id.*, ¶ 15.

In 1997, Valley Pump and Teamsters Local 174 signed an E-U. Dkt. 12, Podhola Decl., ¶ 16, Ex. I. By signing the E-U, Valley Pump agreed to be bound to the CBA between Valley Pump and Teamsters Local 174, and any successor collective bargaining agreements, and to be bound by the WCTPT Trust Agreement and Declaration of Trust. *Id.*, ¶ 16.

In 2015, Valley Pump and Local 174 signed the WTWT Subscription Agreement. Dkt. 12, Podhola Decl., ¶ 17, Ex. J. By signing the subscription agreement, Valley Pump agreed to be

bound to the CBA between Valley Pump and Local 174 and any successor CBAs, and to be bound by the WTWT Trust Agreement. *Id.*, ¶ 17. The Subscription Agreement indicates to Northwest, the WTWT, and Local 174 that Valley Pump has signed and is bound to the 2015-2018 CBA with Local 174. *Id.*, ¶ 17, Ex. J.

Valley Pump and Local 174 were parties to CBAs in effect during the time of the audit related to this lawsuit (July 1, 2010 to June 30, 2018) (the "Audit"). Dkt. 12, Podhola Decl., ¶ 28, Exs, K, L, and M. The WCTPT acknowledged receipt of each of these CBAs with a letter to Valley Pump and Local 174. *Id.*, Exs. K (00375); L (00396); M (00417). Valley Pump also agreed to be bound to both the WTWT and RTW Trust Agreements, and any successor Trusts, in its CBAs with Local 174. Dkt. 12, Podhola Decl., ¶ 34, Exs. K, L, and M (Section 26.05).

Under the CBAs, employer WCTPT contributions are due on or before the 10th day of the month immediately following the month for which contributions are due. Dkt. 12, Podhola Decl., ¶ 32, Exs. K, L, and M (Section 27.03). Contributions received after this are late. *Id.*, ¶ 32. The CBAs require Valley Pump to make contributions on each compensable hour subject to an annual maximum limit. *Id.*, ¶ 32, Exs. K, L, and M (Section 27.01). Valley Pump also agreed to execute all necessary Pension Trust forms and to follow trust rules. *Id.*, ¶ 32, Exs. K, L, and M (Section 27.04). Similarly, employer WTWT and RWT contributions are also due on or before the 10th day of the month immediately following the month for which contributions are due. Dkt. 12, Podhola Decl., ¶¶ 33, 35, Exs. K, L, and M (Section 26.03). Contributions received after this are late. *Id.*, ¶¶ 33, 35. The CBAs require Valley Pump to make contributions for every covered employee covered by the CBAs that is compensated for forty or more hours in the previous month. *Id.*, ¶¶ 33, 35, Exs. K, L, and M (Section 26.01).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 3

1   Employers bound by the WCTPT, WTWT, and RWT Trust Agreements agree to pay
2   liquidated damages equal to twenty percent (20%) of all delinquent and delinquently paid
3   contributions due, together with interest until fully paid, as well as attorneys' fees and costs
4   incurred by the Trusts in collecting the unpaid obligations. Dkt. 12, Podhola Decl., ¶ 19, Exs. A,
5   B, C, D, and E (Article IV, Section 3(b)); ¶¶ 24-25, Exs. F and G (Article IV, Sections 2(b), 2-3);
6   Ex. H (Article IV, Section 2(b), 2-3). Participating employers also agree that the Trust Funds
7   may conduct audits from time to time to ensure compliance. *Id.*, ¶¶ 21-22, Exs. A, B, C, D, and E
8   (Article XI, Section 1); ¶¶ 23, 26, Exs. F and G (Article IX, Section 1); Ex. H (Article IX,
9   Section 1).
10  Together, the CBAs, E-U, subscription agreement, and Trust Agreements require that
11  the employer promptly and fully, report and pay monthly contributions to the Trust Funds for all
12  eligible employees. Dkt. 12, Podhola Decl., ¶ 30.
13  B.   <u>Self-Reporting Requirements</u>
14  Employers participating in the Trust Funds are on their honor to report employee
15  compensable hours for eligible employees (and/or employees that meet the hourly threshold for
16  benefits under the WTWT and the RWT Trusts) and to make the proper contributions under the
17  Trust Funds in accordance with the CBA. Dkt. 12, Podhola Decl., ¶ 31. The Trust Funds have a
18  duty and fiduciary obligation to make sure that they are properly funded, and that employers are
19  properly reporting and contributing. *Id.* Therefore, as an enforcement mechanism, the Trust
20  Funds perform audits of participating employers to ensure proper reporting and compliance. *Id.*
21  As the authorized agent and assignee for the WCTPT, WTWT, and RWT, Northwest
22  receives monthly reports (referred to as "remittance reports") from employers participating in
23  these the Trusts setting forth, for each employee for whom the employer has an obligation to

make an employer contribution for that month, the employee's name, Social Security number, compensable hours, and the contributions required on behalf of each employee. Dkt. 12, Podhola Decl., ¶ 37. Northwest determines how much each participating employer owes in contributions based on the employer's remittance reports. If no contributions are due for a month, employers are still required to notify Northwest that no contributions are due. *Id.*, ¶ 36.

C.	Audit Results

Northwest's ordinary business practice when it performs an audit for the Trust Funds is to compare the employees, hours, and contributions already submitted by employers on a monthly basis to the employer's own payroll records and related documents. Dkt. 12, Podhola Decl., ¶¶ 40, 44-45. This data is then stored by Northwest on its computer system. *Id.*

The Audit at issue was conducted consistent with Trust policy and procedure and involved one bargaining unit of employees covered by the terms of CBAs between Valley Pump and Teamsters Local 174. Dkt. 12, Podhola Decl., ¶¶ 41, 44-45. The Audit ultimately concluded that Valley Pump owed $130,384.56 in contributions to the WCTPT (partly due to a Supplemental Billing); $276,463.92 in contributions to the WTWT, and $17,167.85 in contributions to the RWT. *Id.* These are the final amounts that Northwest determined that Valley Pump owed after the Audit was completed and after the parties' discussions, exchange of documents and information after the Audit was completed. *Id.*, ¶ 42, Ex. N.

The Trust Funds have a fiduciary duty to collect all contributions owed, but they also have a fiduciary duty to not collect or decline contributions that are not owed. Dkt. 12, Podhola Decl., ¶ 43. Valley Pump received credits from all three Trust Funds during this Audit period for overpaid contributions, which is not uncommon in an audit. *Id.* This was due, in part, because after discussion between the parties, the time period covered by the Audit was shortened. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

Nonetheless, at the end of the Audit, Valley Pump still owed contributions to the Trust Funds. *Id.*

Northwest completed the original Audit on or around March 31, 2020 and discussed the findings with Valley Pump. Dkt. 12, Podhola Decl., ¶ 46. Northwest sent its original and revised Audit findings to Valley Pump in the spring and summer of 2020. Dkt. 12, Podhola Decl., ¶ 47, Ex. N (bate stamp pages 00418-00421, 00425-00428)). The revised Audit findings were the result of reducing the time period covered by the Audit for all three Trusts (*see id.*, ¶ 43). It was also determined a supplemental billing for the WCTPT was needed for non-reported bargaining unit members not billed in the prior Audit findings. *Id.*, Podhola Decl., ¶ 47, Ex. N (00420-421, 00427-00428). The supplemental billing was for the time period of the prior Audit: April 1, 2011 to December 31, 2014. *Id.*, Podhola Decl., ¶ 47, Exs. P (00439-00442), T, and U.[1]

In the summer of 2020, Valley Pump's counsel at that time, Robert West, was asked to give reasons why the revised Audit was not correct. Dkt. 12, Podhola Decl., ¶¶ 48-49, Ex. N (00427-00431)). Mr. West never provided any valid reasons as to why the Audit was not correct. *Id.*, ¶¶ 48-49. On July 27, 2020, before this lawsuit was filed, counsel for Northwest sent a letter to Mr. West listing the total amounts owed for the WCTPT, WTWT, and the RWT audit. *Id.*, ¶ 50, Ex. O. Valley Pump has not paid these amounts. *Id.*, ¶ 51.

The Audit reflects that Valley Pump properly reported and paid contributions for some eligible employees (from January 1, 2015 to June 30, 2018 – as to the WCTPT; from July 1, 2010 to June 30, 2018 – as to the WTWT and RWT), but it did not report all eligible employees and/or compensable hours. Dkt. 12, Podhola Decl., ¶¶ 52-54, Exs. P, Q, and R.

---

[1] A Supplemental Billing Report is determined and created when non-reported bargaining unit members are discovered. Dkt. 12, Podhola Decl., ¶ 52. For the purposes of the Audit, testing revealed a full audit was needed on all non-reported employees performing bargaining unit work and for non-reported bargaining unit members not billed in the prior Audit. *Id.*, ¶ 52, Ex. P.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

The Audit reflects that Valley Pump still owes (1) $130,384.56 in pension contributions, $26,076.91 in liquidated damages (20% of delinquent contributions), and $22,952.76 in interest to the WCTPT (Dkt. 12, Podhola Decl., ¶ 72); (2) $276,463.9 in health and welfare contributions, $55,292.78 in liquidated damages (20% of delinquent contributions), and $52,653.20 in interest to the WTWT related to the audit (*id.*, ¶ 73); and (3) $17,167.85 in RWT contributions, $3,433.57 in liquidated damages (20% of delinquent contributions), and $3,297.61 in interest to the RWT (*id.*, ¶ 74); *see* Dkt. 12, Ex. S (interest calculations (through June 15, 2021) for the WTWT (pp. 00324-00325); for the RWT (pp. 00326-00327); and for the RWT (p. 00327.5). Thus, the total amount claimed by Northwest for all the Trust Funds (with interest through June 15, 2021) is $587,723.17. This does not include attorneys' fees and costs, which the Trust Funds have incurred related to collecting these delinquent contributions (and will continue to accrue) until these amounts are paid in full. Dkt. 12, Podhola Decl., ¶¶ 76-77.

D.  <u>Facts Related to Plaintiff's Challenge to the 2015-2018 CBA</u>

Joe Alcorn, the present owner and operator of Valley Pump, took over the small family-run business from his father James Alcorn in 2015, when his father began experiencing physical and mental debilities. Dkt. 14-1, Declaration of Joe Alcorn, ¶¶ 1-6. Mr. Alcorn has been the primary employee of Valley Pump since 2015 and became Valley Pump's president in 2016. *Id.*, ¶¶ 7-8.

Mr. Alcorn states that his father never told him, nor was he otherwise aware, of the existence of a CBA with Union 173 for contributions to the WTWT for the 2015-2018 CBA and was also not aware that Valley Pump filed reports with Northwest. *Id.*, ¶¶ 9-10. Mr. Alcorn has not received or requested benefits under the WTWT, although he claims he would have been the primary beneficiary under the plan as he worked the most hours with Valley Pump during 2015-

1  2018. *Id.*, ¶ 11. Instead, Valley Pump provided health and welfare benefits for its employees

2  from 2015-2018 through various insurance providers in the amount of $149,283.84. *Id.*, ¶ 12.

3  Mr. Alcorn states that Valley Pump would not have paid out these benefits if there was a CBA

4  providing the same benefits to Valley Pump employees. *Id.*, ¶ 13.

5  Mr. Alcorn concedes that Valley Pump made payments to Northwest during the Audit but

6  explains this was because "Valley Pump was initially unable to determine whether the CBA was

7  valid." *Id.*, ¶ 14. Additionally, Mr. Alcorn does not believe his father signed the 2015-2018 CBA

8  because the signature on the CBA does not match his father's signature at that time (in 2015 his

9  father had a "shaky" signature). *Id.*, ¶¶ 15-18.

10  JURISDICTION AND VENUE

11  The Court has jurisdiction over the subject matter of this action under Section 502(e)(l)

12  and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132

13  (e)(l) and (f); and ¶ 301(a) of the Taft-Hartley Act, 29 U.S.C. §185(a). Venue is proper in this

14  District under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132 (e)(2) because the Trust Funds are

15  administered in this District. *See* Dkt. 12, Podhola Decl., ¶¶ 2-8.

16  LEGAL STANDARDS

17  A.   Summary Judgment Standard

18  Summary judgment is appropriate if there is no genuine dispute as to any material fact

19  and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

20  moving party bears the initial burden of demonstrating the absence of a genuine issue of material

21  fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the

22  burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could

23  find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

B.   <u>Governing Law</u>

This case is governed by federal law and ERISA, which supersedes all state laws that relate to employee benefits plans. *See* 29 U.S.C. § 1144(a); *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001); *General American Life Insurance Company v. Castonguay*, 984 F.2d 1518, 1521 (9th Cir. 1993). State laws "includes all laws, decisions, rules, regulations, or other State action having the effect of law...." 29 U.S.C. § 1144(c)(l). Significantly, ERISA's preemption is very expansive, and in fact, has been characterized as "one of the broadest ever enacted by Congress." *Caslonguay*, 984 F.2d at 1522; *Egelhoff*, 532 U.S. at 146.

"The provisions of the trust agreement provide the framework with which a court should analyze an employer's obligation to contribute to a health and welfare fund." *Ind. State Council*

of *Roofers Health & Welfare Fund v. Adams Roofing Co. of Kokomo*, 753 F.2d 561, 564 (7th Cir. 1985). "Trusts ... are to be administered according to trust fund agreements. Trustees have a duty to enforce the terms of their trust fund agreements regarding contributions solely for the benefit of the fund beneficiaries." *Gainey v. Vemo*, 627 F. Supp. 408, 410 (W.D. Wash. 1986) (citing *NLRB v. Amax Coal Co.*, 453 U.S. 322, 336 (1981)). Other plan documents, such as those signed by the parties or incorporated by reference, may also govern an employer's obligation to contribute to the trust. *See, e.g., Bakery & Confectionery Union & Indus. Int'l Health Benefits & Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 959–61 (6th Cir. 1998) (finding that written supplements contemplated by collective bargaining agreement were plan documents); *Bds. of Trs. of Sheet Metal Workers Local 104 Health Care Plan v. Bay Area Balancing & Cleanrooms, Inc.*, 2016 WL 2902231, slip op. at 1 (N.D. Cal. 2016) ("Defendant was a signatory to and bound by the terms of collective bargaining, trust, and subscription agreements, which required Defendant to follow reporting requirements and make contributions based on hours worked by Defendant's employees."); *Trs. of S. Cal. IBEW-NECA Pension Plan v. M.L. Alexander Elec. Co. Inc.*, 2009 WL 10672431, slip op. at 2 (C.D. Cal. 2009) ("Each of these 'Master Agreements' bind Defendant to the 'Trust Agreements' because the Trust Agreements are incorporated by reference into the Master Agreements.").

## DISCUSSION

A.   <u>WTWT Trust and 2015-2018 CBA</u>

Valley Pump does not dispute that it is bound to the CBAs for the July 1, 2009 to June 30, 2012 ("2009-2012") and July 1, 2012 to June 30, 2015 ("2012-2015") collective bargaining time periods. Dkt. 14. Rather, Valley Pump challenges the amounts owed to WTWT pursuant to the 2015-2018 CBA because it believes the CBA was not signed by James E. Alcorn.

Valley Pump argues that there was no mutual assent to enter into the 2015-2018 CBA because Joe Alcorn disputes that the signature on the 2015-2018 CBA belonged to his father and is not aware of any other agent authorized to act on Valley Pump's behalf at that time. Dkt. 14, pp. 4-5. Alternatively, and assuming that it is bound to the 2015-2018 CBA, Valley Pump argues that Northwest's claims specific to WTWT are barred by latches because Valley Pump paid for these same benefits to its employees, and/or that Northwest has waived any right to the contributions. *Id.*, pp. 5-7.

      1.    <u>Enforcement of 2015-2018 CBA</u>

Aside from Joe Alcorn's belief that the signature on the 2015-2018 CBA does not belong to his father, there is no objective evidence to confirm that James E. Alcorn did not sign the 2015-2018 CBA. Valley Pump did not present any handwriting or medical expert testimony to show that James E. Alcorn was medically unfit to sign the 2015-2018 CBA.

The record reflects that the 2015-2018 CBA was signed by Valley Pump and then presented to Local 174 and the WCTPT Trust. The 2015-2018 CBA was a successor agreement and Valley Pump had already signed at least two CBAs that required contributions to trust funds in 2009 and 2012. Dkt. 12, Podhola Decl., ¶¶ 28, Exs. K, L, M. The WCTPT gave notice of its acceptance of the 2015-2018 CBA with James E. Alcorn's signature (exactly as it had with the prior CBAs). *Id.* Both the 2015-2018 CBA and Subscription Agreement were signed on August 7, 2015 and presented to Local 174; Local 174 signed the documents on August 14, 2015. Dkt. 12-1, p. 305; p. 64.

Valley Pump was represented by counsel during the Audit and was given opportunities to provide reasons why the Audit was not correct. *Id.*, ¶¶ 48-49. The issue of Mr. Alcorn's signature was never raised. *Id.* Additionally, Valley Pump does not dispute that it made contributions to

the WTWT during the entire time of the Audit (including during 2015-2018). Dkt. 14-1, Alcorn Decl., ¶ 14.

Even assuming that the elder Mr. Alcorn did not sign the 2015-2018 CBA, the Court concludes that Valley Pump adopted the 2015-2018 CBA by is conduct. Valley Pump continued to make Trust Fund contributions and submitted remittance reports to all three Trusts (including the WTWT). It is undisputed that Valley Pump submitted to the Audit and never raised the argument that the 2015-2018 CBA was not valid during or immediately after the Audit although it was represented by an attorney. Valley Pump also accepted all the CBAs (including the 2015-2018 CBA) and Northwest sent a letter of acknowledgement to Valley Pump and Local 174 for each contract, including 2015-2018. Dkt 12, Podhola Decl., p. 9; Dkt. 12-2, pp. 22, 44, and 66; Dkt. 12, Podhola Decl., ¶ 28, Exs. K, L, and M. This conduct is sufficient to show that Valley Pump adopted the 2015-2018 CBA. See *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 763-764 (9th Cir. 1981); *see also Bricklayers Local 21 of Ill. v. Banner Restoration, Inc.*, 385 F.3d 761, 766-769 (7th Cir. 2004) (adoption of CBA by conduct found where employer made trust fund contributions in compliance with CBA, submitted monthly reports to trust funds, and submitted to an audit).

In addition, Valley Pump signed the WTWT Subscription Agreement on the same day the 2015-2018 CBA was signed. Dkt. 12, Podhola Decl., ¶ 17, Ex. J. In the Subscription Agreement, Valley Pump confirmed to the WTWT and Local 174 that it had "an enforceable" 2015-2018 CBA with Local 174:

> The Employer and Labor Organization below are parties to a Collective Bargaining Agreement providing for participation in the Above Trust. An enforceable Collective Bargaining Agreement must exist precedent to participation in the Trust.

*Id.*, Ex. J. The Subscription Agreement identifies the "Collective Bargaining Agreement" as the

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 12

2015-2018 CBA. *Id.* The Subscription Agreement was signed by Valley Pump Treasurer Ruth Alcorn on August 7, 2015, and the validity (or authority) of this signature or document has never been challenged by Valley Pump. The Subscription Agreement confirms that Valley Pump (i) had a valid 2015-2018 CBA with Local 174; (ii) is bound to the 2015-2018 CBA with Teamsters Local 174, (iii) is bound to the WTWT Trust Agreement; (iv) would pay the WTWT contribution rates identified; and (v) would pay those contributions ten days after the last day of each month that they are due. Dkt. 12, Podhola Decl., ¶ 17, Ex. J.

Thus, while Valley Pump may dispute the validity of James E. Alcorn's signature, such dispute does not raise a genuine issue of material fact sufficient to defeat the motion for summary judgment as Valley Pump adopted the 2015-2018 CBA by its conduct and signed the corresponding 2015 Subscription Agreement (which is not disputed).

2. <u>Laches</u>

"The defense of laches is unavailable in actions at law governed by a statute of limitations." *Trustees of the S. Cat IBEW-NECA Pension Plan v. High-Light Elec., Inc.*, 2010 US. Dist. LEXIS 20 154152 at *6, 2010 WL 11596169 (C.D. Cal. 2010) (citing *UA Local 343 of the United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus, v. Nor-Cal Plumbing, Inc.*, F.3d 1465, 1474 n. 3 (9th Cir. 1994); *see also Columbia Ford Hyundai, Inc.*, 2020 WL 2410461, *8 (Coughenour, May 12, 2020). The statute of limitations in Washington State for Trust Funds to file lawsuits against employers for delinquent contributions is six years. *See Trustees for Alaska Laborers-Construction Industry Health and Security Fund v. Ferrell et al.*, 812 F.2d 512, 517 (9th Cir. 1987) (trustees claim for unpaid contributions to pension plan is a breach of contract claim governed by state law limitations period for contract actions).

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 13

Here, Valley Pump is only challenging WTWT contributions back to July 1, 2015. Dkt. 14. Northwest filed this lawsuit on September 10, 2020. Dkt. 1. The record reflects that the WTWT did not know about the delinquent contributions until the Audit was completed around March 31, 2020 (and records were cross-checked with Valley Pump's payroll and related records) because the monthly contributions submitted by Valley Pump are on the honor system. Dkt. 12, Podhola Decl., ¶¶ 3, 36-37, 40, 44-46. The Trust Fund can seek delinquent contributions that are more than six-years old (which is the statute of limitations in Washington state (RCW 4.16.040) when they are discovered for the first time in an audit such as this. *See Northern California Retail Clerks Unions and Food Employers Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990) (because this is a federal cause of action, the time an action accrues "is when the plaintiff knows or has reason to know of the injury that is the basis of the action.").

Accordingly, Valley Pump is precluded from asserting the defense of laches in this action.

       3.      <u>Waiver</u>

Valley Pump also contends that Northwest waived its right to collect delinquent contributions to the WTWT for the 2015-2018 CBA (*i.e.*, $276,463.92) because during this same time, Valley Pump provided health and welfare benefits at its own cost for its employees in the amount of $149,283.84. Dkt. 14, pp. 6-7. In support, Valley Pump incorrectly relies on state law governing contractual rights. *See id.*, p. 6.

As previously noted, this is a standard ERISA claim under 29 U.S.C. § 1145 and ERISA supersedes all state laws that relate to employee benefits plans. *See* 29 U.S.C. § 1144(a); *Egelhoff*, 532 U.S. at 146; *Castonguay*, 984 F.2d at 1521; *see also Columbia Ford Hyundai, Inc.*,

2020 WL at *7 (holding that state law arguments against enforcement of plan documents (*i.e.*, unenforceable bilateral contract and lack consideration), were preempted by ERISA).

Pursuant to § 1145, participating employers are obligated to make contributions to a multi-employer trust fund in accordance with the contract and trust agreement. *See* 29 U.S.C. § 1145. Congress enacted § 1145 "to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law.'" *Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1103 (3d Cir. 1996) (quoting 126 Cong. Rec. 23,039 (1980) (remarks by Rep. Thompson)). "Congress sought to ensure that benefit plans are able to rely on contribution promises of employers 'because plans must pay out to beneficiaries whether or not employers live up to their obligations.'" *Id*. (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990)). Accordingly, welfare funds are "entitled to enforce the writing without regard to understandings or defenses applicable to the original parties." *Id*. (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989)).

As a party to a Taft-Hartley trust fund (such as the WTWT), Valley Pump must follow the contract language for contributions, even if, for example, the contributions are made based on the hours worked of subcontractor employees that will not receive benefits. *See* 29 USC § 1145; *see also*, *Walsh v. Schlecht*, 429 U.S. 401 (1977).  In addition, a Taft-Hartley (or multi-employer) trust fund pools resources and contributions so that "[p]ayments to a multi-employer trust made by a contributing employer need not directly correspond to the benefits received by its employees." *Corporate Printing Co. v. New York Typographical Union No. 6*, 135 LRRM 3154,

1990 U.S. Dist LEXIS 8591, *6 (S.D.N.Y. 1990) (unpublished). "The very nature of a multi-employer fund involves the mingling of employer contributions to create a pool out of which particular employees receive benefits; risks are shared, at least to some extent, among employers." *Trustees of Boston University v. District 65, United Auto Workers*, 107 LRRM 2947, 1981 US. Dist. LEXIS 13962, *8-*10 (D. Mass. 1981) (unpublished).

Notably, "Section 302(c)(5) does not require that an employer's contribution be set aside only for his employees when the employer payments are made to a multi-employer trust fund. The advantages of a "pooled" trust fund do not accrue to any particular employer, but rather are beneficial to all the employers contributing." *Crawford v. Cianciulli*, 357 F.Supp. 357, 373 (E.D. Pa. 1973).

In sum, Valley Pump's contributions are contractually required under ERISA because the contributions inure to the benefit of all the beneficiaries of the Trust, regardless of whether a particular beneficiary works for Valley Pump. Therefore, Valley Pump's provision of additional benefits to its employees does not void its contractual obligations under the 2015-2018 CBA. Valley Pump must honor the CBAs that it is bound to and pay the proper contributions rates—regardless of how many of its employees rejected benefits or the value of the benefits to its employees from the WTWT. *See Columbia Ford*, 2020 WL 2410641, *5 (employer's requirement to make contributions is not contingent upon employees actually receiving any benefits).[2] Valley Pump's liability to the WTWT is based on the CBAs, Subscription Agreement, and ERISA—not on who received benefits and the amount of benefits paid out.

---

[2] Because Valley Pump's contribution payments are based on the compensated hours of Valley Pump employees, Joe Alcorn's hours during the 2015-2018 CBA (*see* Dkt. 14-1, Alcorn Decl., p. 3), were also subject to report and contributions.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 16

Thus, the undersigned concludes that Northwest did not waive its right to recover delinquent contributions to the WTWT for the 2015-2018 CBA time period or any other time period at issue in the Audit.

B.      Demand for Contributions, Related Damages, and Costs

It is undisputed that the CBAs and the Trust Agreements require Valley Pump to pay specific contributions based on compensated hours. Dkt. 12, Podhola Decl., ¶¶ 5-7, 14-17, 20, 28, 30, 32-36, 47 Exs. A through M, T and U). However, Valley Pump failed to do this. *Id.*, Podhola Decl., ¶¶ 41-43, 47, 51-54, 57-76, Exs. N through S).

Because trust funds must use trust resources to recover delinquent contributions, one of the main principles behind ERISA is to provide efficient, simple, and inexpensive recovery methods. *See Southwest Administrators v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986); *Columbia Ford Hyundai, Inc*., 2020 WL 2410461. ERISA imposes a duty upon employers to maintain records of the number of hours worked by employees adequate to permit trustees to determine the accuracy of the employer's contributions; and once the trustees produce evidence raising genuine questions about the accuracy of the employer's records and the number of hours worked by the employees, the burden shifts to the employer to come forward with evidence of the precise amount of work performed. *Brick Masons Pension Trust v. Industrial Fence & Supply, Inc*., 839 F.2d 1333, 1337-1339 (9th Circuit, 1988) (citing *Combs v. King*, 764 F.2d 818 (11th Cir.1985). Therefore, Valley Pump must provide specific evidence showing that the Audit is incorrect to defeat the summary judgment motion (*i.e.*, valid documentation with employee names and hours). Because Valley Pump has failed to do so, the Court may assume the Audit calculations are correct and grant Northwest's motion.

29 U.S.C. § 1132(g)(2) provides that in an action to recover delinquent contributions in which a judgment in favor of the plan is awarded, the court shall award the plan—

 (A) the unpaid contributions,

 (B) interest on the unpaid contributions,

 (C) an amount equal to the greater of—

  (i) interest on the unpaid contributions, or

  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under federal or State law) of the amount determined by the court under subparagraph (A),

 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

 (E) such other legal or equitable relief as the court deems appropriate.

"Section 1132(g)(2) is 'mandatory and not discretionary.'" *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (quoting *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying, Co.*, 746 F.2d 557, 569 (9th Cir. 1984)). For a court to grant a mandatory award under § 1132(g)(2), "the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award." *Id*.

Here, all three requirements for a mandatory award under § 1132(g)(2) are met. Valley Pump was delinquent in its contributions to the Trust Funds in the amount of $424,016.33 at the time this lawsuit was filed. Dkt. 12, Podhola Decl., ¶¶ 41-43, 47, 51-54, 57-76, Exs. N through S). Northwest is entitled to judgment against Valley Pump for those delinquent contributions under § 1145, as it has not established any basis to excuse it from its obligation to contribute to the Trust Funds and remains delinquent. *Id.*, ¶¶ 72-74, Exs. P (00438-00439); Q (00235); R

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 18

(00300). Finally, the Trust Agreements provide for liquidated damages, interest, and attorneys' fees, and court costs. *Id.,* ¶¶ 19, 24-25, Exs. A through M, T and U.

## CONCLUSION

Because there are no genuine issues of material fact as to Valley Pump's obligation to pay the requested delinquent contributions to the Trust Funds for the July 1, 2010 through June 30, 2018 Audit, the Court hereby **GRANTS** Plaintiff's motion for summary judgment (Dkt. 11), and **ORDERS** that Plaintiff is entitled to judgment in its favor and to an award of delinquent contributions, liquidated damages, and interest, as follows:

    A.    For the WCTPT for the audit period January 1, 2015 to June 30, 2018 and the Pension Supplemental Billing:
$130,384.56 in contributions;
$26,076.91 in liquidated damages;
$22,952.76 in interest (through June 15, 2021)

    B.    For the WTWT for the audit period July 1, 2010 to June 30, 2018:
$276,463.92 in contributions;
$55,292.78 in liquidated damages;
$52,653.20 in interest (through June 15, 2021)

    C.    For the RWT for the audit period July 1, 2010 to June 30, 2018:
$17,167.85 in contributions
$3,433.57 in liquidated damages;
$3,297.61 in interest (through June 15, 2021)

It is further **ORDERED** that Northwest is entitled to its reasonable attorney fees and costs and within **14 days** of the date this Order is issued, Northwest shall file an appropriate motion for its reasonable attorney fees and costs, along with an updated accrued interest value.

DATED this 2nd day of August, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge